Clifford S. Davidson, OSB No. 125378
csdavidson@swlaw.com
SNELL & WILMER L.L.P.
One Centerpointe Drive, Suite 170
Lake Oswego, OR  97035
Telephone: (503) 624-6800
Facsimile: (503) 624-6888

Andrew M. Jacobs (*pro hac vice*)
ajacobs@swlaw.com
SNELL & WILMER L.L.P.
400 East Van Buren Street, Suite 1900
Phoenix, AZ 85004
Telephone: (602) 382-6000
Facsimile: (602) 382-6070
Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| WESTERN STATES CENTER, INC., an Oregon public benefit corporation; THE FIRST UNITARIAN CHURCH OF PORTLAND, OREGON, an Oregon religious nonprofit corporation; SARA D. EDDIE, an individual; OREGON STATE REPRESENTATIVE KARIN A. POWER, an elected official; and OREGON STATE REPRESENTATIVE JANELLE S. BYNUM, an elected official, | Case No. 3:20-cv-01175-JR |
| | **FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |
| Plaintiffs, | |
| vs. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FEDERAL PROTECTIVE SERVICE; and UNITED STATES MARSHALS SERVICE | |
| Defendants. | |

## INTRODUCTION

1.      This lawsuit concerns the rights of the people of Portland, and of Oregon, in the face of a federal government that, while extolling the nation's Founders and the statues erected to them, disregards the history and laws that established federal government in the first place.

2.      The Bill of Rights to the United States Constitution – insisted upon as a condition of entry into the Union by many who opposed federal government in the 1780s – protects liberty in its Tenth Amendment by allocating powers between the Federal Government, on one hand, and the states and the people, on the other.

3.      That principle is alive and vital today to Americans exercising the expressive freedoms guaranteed to them by the Bill of Rights in its First Amendment. Vindicating the rights of private citizens to bring claims where the federal government injures them through overstepping its limited powers in violation of the Tenth Amendment, a unanimous United States Supreme Court explained in 2011 that:

> Federalism also protects the liberty of all persons within a State by ensuring that laws enacted in excess of delegated government power cannot direct or control their actions….By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power. When government acts in excess of its lawful powers, that liberty is at stake.
>
> The limitations that federalism entails are not therefore a matter of rights belonging only to the States. States are not the sole intended beneficiaries of federalism.  An individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States when the enforcement of those laws causes injury that is concrete, particular, and redressable. Fidelity to principles of federalism is not for the States alone to vindicate.

*Bond v. United States*, 564 U.S. 211, 220-22 (2011) (quotations and citations omitted)

Page 1 – FIRST AMENDED COMPLAINT
4811-2460-0259

## The Constitution's Reservation of the Police Power to the States

4.     The United States Constitution unquestionably denies the federal government the plenary authority to police Portland, Oregon that it presently seeks to exercise. Every power that the Constitution does not specifically grant to the Federal Government, or forbid to the states, is reserved to the states and to the people. Whether, and how, to police is left to the states, like Oregon, and delegated in part to their municipalities, including Portland. Presidents cannot change that. [1]

5.     One long-recognized reason the police power is left to state and local officials is to permit communities to adopt the policing policies of their choosing—subject to certain limitations contained in the Constitution, such as the Fourth Amendment's protections against unreasonable searches and seizures, the First Amendment's protections of free speech, and the Fourteenth Amendment's protections against discrimination. Oregonians have adopted such policies. For example, Oregon's laws prevent racial profiling, establish training standards and provide certain immunities to law enforcement.

6.     One benefit of leaving the police power to the states, as the Framers of the Constitution wisely did, is that it promotes law enforcement accountability within policed communities. Because Oregon and its municipalities control and direct policing, policed communities may in turn control how and by whom laws are enforced. And, those communities may do so much more directly with respect to their local or state police than they could through Congress or federal agencies.

---

[1] Indeed, the President himself has described the constitutional structure that the Framers created as "the culmination of thousands of years of western civilization and the triumph not only of spirit, but of wisdom, philosophy, and reason . . . ." https://www.whitehouse.gov/briefings-statements/remarks-president-trump-south-dakotas-2020-mount-rushmore-fireworks-celebration-keystone-south-dakota/ (accessed 07/18/2020).

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

**The President's Design to Deter First Amendment-Protected Speech and Activity, and the Defendant Agencies' Scheme to Deter Speech Through a Variety of Illegal and Arguably Otherwise Legal Policing, All of Which Violates the Tenth Amendment**

7.      Unwilling to accept the Framers' constitutional constraints on his power, the President fulfilled his promise to deploy militarized federal law enforcement personnel to "quickly solve," "for" local authorities, the supposed "problem" of protesters. As they were ordered to do, the defendant agencies descended upon Portland. Though sent in the guise of bringing order to Portland's streets, their arrival has made things much worse for Portlanders.

8.      The federal government is entitled to protect federal property and personnel, and to enforce federal law in a lawful manner. Defendants have far exceeded these constitutional powers in violation of the Tenth Amendment. Without first obtaining arrest warrants, defendants have undertaken to pluck Portlanders off the street, stuff them into vans, secrete them to unknown locations, and release them—merely for walking home or protesting peacefully, and away from federal property.

9.      These federal authorities have conducted general policing away from and out of the sight of the courthouse they are supposedly immediately engaged in defending, roving blocks away to chase, attack and arrest protesters.  These actions away from any federal situs plainly violate the Tenth Amendment, even if they are sometimes conducted in a manner that would otherwise be legal.

10.      But the agency defendants' design to suppress speech does not consist solely of Tenth Amendment-violative attacks on citizens engaged in First Amendment activities beyond the line of sight to the Hatfield Courthouse.

11.      The agency defendants exhibit a conspicuous pattern of policing performed with the goal to deter the First Amendment-protected activities of gathering in political protest, and of observing and reporting upon political protest. Both near and removed from the situs of the

Page 3 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

Hatfield Courthouse, the agency defendants are gassing crowds without provocation or fair warning. Their forces beat and gassed a man with his hands at his sides for the offense of speaking reproachfully to them as an example. Their forces arrest and release persons away from the federal situs supposedly being defended. Their forces march in formation away from the federal situs, gassing and arresting persons objecting to that already unconstitutional and thus illegal conduct, which is itself thus unconstitutional and illegal. Their forces shoot with projectile bullets clearly visibly identified working press, and have done so even after the entry of Judge Simon's order enjoining such conduct (discussed below).

12.     In sum, the defendant agencies have engaged in procedural violations of the Tenth Amendment, by policing in a plenary fashion too far from the Hatfield Courthouse.

13.     But their unwanted presence in Portland has an additional purpose: to carry out an evident scheme to suppress First Amendment activity through a pattern of oppressive policing, including plenary policing away from the Hatfield Courthouse, Fourth Amendment violations in the manner such already-illegal policing is executed, hostility to the act of protest itself, and a conscious spectacularity in policing that is reminiscent of the attempt to "shock and awe" Iraq at the time of American military action there in 2003. This scheme also deters the expressive and Free Exercise rights of those who for reasons of religion and conscience would bear witness to these violations, and the undeserving victims of them, as observers.

14.     The federal government has no right to do plenary policing out of the sight of the Hatfield Courthouse, and its design to suppress speech with which the President disagrees through this conduct is patent and obviously illegal.  This Court should enjoin it, both preliminarily and ultimately through a permanent injunction.

15.     Though beyond the immediate scope of this suit and the relief it directly seeks, if the Court does not enjoin the Government on the ground in Portland, then this pattern of illegal

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

plenary policing is just getting started. Defendant Department of Homeland Security, and the President, have stated publicly that the Federal Government plans to expand its militarized presence throughout the United States. *See* https://www.whitehouse.gov/briefings-statements/remarks-president-trump-operation-legend-combatting-violent-crime-american-cities/ (accessed July 22, 2020) (the President announcing "surge of federal law enforcement" because he was dissatisfied with state and local public safety efforts); https://www.npr.org/2020/07/17/892393079/dhs-official-on-reports-of-federal-officers-detaining-protesters-in-portland-ore (accessed July 20, 2020);[2] https://www.chicagotribune.com/news/criminal-justice/ct-chicago-police-dhs-deployment-20200720-dftu5ychwbcxtg4ltarh5qnwma-story.html (accessed July 20, 2020) (quoting the President: "I'm going to do something that I can tell you, because we're not going to leave New York and Chicago and Philadelphia, Detroit and Baltimore, and all of these — Oakland is a mess. We're not going to let this happen in our country, all run by liberal Democrats . . . . We're going to have more federal law enforcement, that I can tell you . . . . In Portland, they've done a fantastic job. They've been there three days and they really have done a fantastic job in a very short period of time, no problem.")

16.    This Court should enforce the Tenth Amendment against the federal government that only came to exist in the first place in 1791 because there is a Bill of Rights including a First Amendment right to speak and protest, a separate First Amendment right to the free exercise and practice of religion; a Fourth Amendment right against unreasonable arrests and searches; and a Tenth Amendment reservation of powers to the states, including the right to local control of policing. The Tenth Amendment is, as the Supreme Court reminded us in 2011, a bulwark of

---

[2] Also in that interview, the federal official refused to state whether there had been more than one abduction from the streets of Portland, using unmarked vehicles and unidentified federal officers.

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

liberty, because "federalism protects the liberty of the individual from arbitrary power." *Bond*, 564 U.S. at 222.  Portland, and Oregon, and the people who live, assemble, and protest in Portland, Oregon, have a constitutional right to be protected against the continuing spectacular federal overreach unleashed in the streets of Portland.

## JURISDICTION AND VENUE

17.    This case arises under the laws of the United States—specifically, the Federal Constitution and 28 U.S.C. § 2201, the Declaratory Judgments Act. The Court therefore has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

18.    Venue is proper under 28 U.S.C. § 1391(e)(1) because the defendants are agencies of the United States and officers of the United States acting in their official capacity, and (1) at least one plaintiff resides in this district; or (2) a substantial part of the events or omissions giving rise to the claims occurred in this district.

19.    Alternatively, venue is proper in this district, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this district.

20.    Venue lies in the Portland Division of the District of Oregon, pursuant to LR 3-2, because a substantial part of the events or omissions giving rise to the claims occurred in Multnomah County, Oregon.

### A.    Western States Center

21.    Plaintiff Western States Center, Inc. ("WSC") is an Oregon public benefit corporation headquartered in Portland. Its mission is to strengthen the organizing capacity of often marginalized communities; to provide training, leadership development and organizational capacity to social movements and leaders; to promote peaceful protest and reconciliation; and to

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

defend democracy and democratic engagement. WSC teaches peace, de-escalation and reconciliation. During the protests in Portland throughout 2018 and 2019, WSC worked closely with the City of Portland to deescalate conflict between protesters and Portland Police Bureau. WSC sponsored one of the first intentional non-violent rallies in front of Portland City Hall in 2018.

22.    Defendants' overreach into the affairs of local law enforcement has caused WSC to suffer injury. Beginning on May 26, 2020, when George Floyd was killed in Minneapolis, WSC devoted significant resources to deescalating conflict between the Portland Police Bureau and protesters, and was making progress in this regard. Then the Federal Government arrived and began to undertake purported law enforcement actions on the streets of Portland. Defendants harmed WSC by inserting itself into the policing of Portland, which disrupted WSC's efforts and frustrated its mission. This required WSC to divert resources away from other programs in order to address the chaos the defendants caused when they overstepped the constitutional bounds limiting their authority to engage in purported law enforcement activities. Unless defendants are enjoined, WSC will have to continue diverting resources to address defendants' unlawful acts.

23.    Defendants' unlawful actions in Portland have necessitated additional expenditures, including but not limited to the following: (1) WSC spent funds from its communications retainer to issue statements and disseminate information to the public and to WSC's supporters; (2) the executive director has spent approximately 70-percent of his time, over the past four days, addressing the disruption defendants' police practices have caused; (3) the executive director involved two other staff members in his efforts; and (4) WSC has had to retain a second communications firm. Unless defendants are enjoined, WSC will have to continue diverting, and expending, resources to address defendants' continued unlawful acts.

Page 7 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

B.    <u>First Unitarian Church of Portland</u>

24.    Plaintiff The First Unitarian Church of Portland, Oregon ("First Unitarian") is a domestic religious nonprofit corporation located in Portland. Founded in 1866, First Unitarian draws upon a long heritage of social activism. In fact, activism and social justice are central tenants of the church; its stated mission is, among other things, "to act for social justice." First Unitarian has organized a Social Justice Council and a Police Accountability Team.

25.    First Unitarian has had a social justice council for many years and recently has assembled a protest witness group, the purpose of which is to equip congregants to observe and monitor protests and the police response to them. It is part of First Unitarian's social justice mission—a fundamental aspect of religious life and practice—to encourage protest against unjust laws and government actions. The congregation has been quite active in the George Floyd protests. Moreover, First Unitarian's witnessing activities are themselves a form of expression and assembly separately protected by the First Amendment. Because defendants began policing the streets of Portland, and throwing suspected protestors into unmarked vehicles even when peaceful, congregant participation in the protests has dropped and First Unitarian's social justice mission has been harmed. There was not a similar drop when Portland Police Bureau maintained their role as the police in Portland, and federal law enforcement limited itself to protecting federal facilities and personnel.

26.    First Unitarian has become hesitant to encourage its congregants to protest even though such protesting is peaceful, because defendants' unconstitutional targeting of peaceful protestors increases both the risk of bodily harm to congregants and the likelihood of the church's civil liability to congregants who are injured or traumatized in the course of abduction by federal law enforcement. Through their unconstitutional overreach into general policing, defendants have thwarted First Unitarian's pursuit of social activism as a tenet of faith, and thus its and its members

Page 8 – FIRST AMENDED COMPLAINT
4811-2460-0259

Free Exercise rights.

27.     Furthermore, the Tenth Amendment reserves to First Unitarian Portland, a Portland resident, the right to be policed only by Portland Police Bureau or state authorities when appropriate—and by federal authorities only to the extent authorized by valid federal law, federal regulation or the Federal Constitution.

### C.     <u>Sara Eddie</u>

28.     Plaintiff Sara Eddie is an individual residing in Portland. She is a legal observer volunteer with the ACLU of Oregon. As a neutral legal observer, she attends and observes demonstrations and protests, and documents what she sees—including any police abuses or any violence or vandalism by protestors. Since approximately June 1, 2020, Ms. Eddie has acted as a legal observer at numerous protests in the aftermath of the killing of George Floyd. Ms. Eddie views objective, neutral legal observing as an important way to give back to the community and to protect civil rights. Defendants' overreaching police activities, including abductions of peaceful protestors off the streets of Portland, have caused Ms. Eddie to cease her service as a legal observer downtown, where the largest and most turbulent protests occur. She does not want to risk being "disappeared," especially because she cares for her 96-year-old grandfather and has two children.

29.     Defendants' unconstitutional overreach has caused Ms. Eddie damage. Because of defendants' actions in connection with protests and the understandable concern they have caused her, she has refrained from exercising her First Amendment right to observe law enforcement and from undertaking her meaningful volunteer work. As the largest, most frequent, and most turbulent protests occur downtown, defendants' unconstitutional acts in downtown Portland have constrained her ability to contribute meaningfully as a legal observer. She will continue to refrain from legal observing in downtown Portland until the Court enjoins defendants' unconstitutional conduct.

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

30.     Furthermore, the Tenth Amendment reserves to Ms. Eddie, a Portland resident, the right to be policed only by Portland Police Bureau or state authorities when appropriate—and by federal authorities only to the extent authorized by valid federal law, federal regulation or the Federal Constitution.

**D.    Oregon State Representative Karin Power**

31.     Representative Karin A. Power is the duly-elected representative of Oregon's 41st House District, which encompasses Milwaukie, Oak Grove and parts of Southeast Portland. She is the Vice-Chair of the House Judiciary Committee, which oversees, creates and modifies state civil and criminal laws; oversees the judicial system; and sets the certification and licensure requirements for criminal justice public safety professionals, including Portland police officers. As a legislator, she makes and enacts laws, including on issues of law enforcement. Defendants' violations of the Tenth Amendment frustrated her right and ability to set state law enforcement policy applicable in Portland and throughout the state of Oregon. By infringing upon the sovereignty of the State of Oregon, defendants have diminished Representative Power's ability to establish law enforcement policy as her constituents direct.

32.     Furthermore, in her capacity as a citizen, Representative Power has the right to be policed solely by state and local authorities—and by federal authorities only to the extent authorized by valid federal law, federal regulation or the Federal Constitution.  And she has the right as a citizen to gather with political protesters, to participate in political protest, and to observe political protest, all of which the defendants seek to chill or prevent—and have chilled and prevented, in the case of Rep. Power—through their First Amendment-suppressive activities.

**E.    Oregon State Representative Janelle Bynum**

33.     Representative Janelle S. Bynum is the duly-elected representative of Oregon's 51st House District, which encompasses East Portland, Damascus, Gresham, Boring, North Clackamas

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

and Happy Valley. She is the mother of four Black children, two of whom are male. She fears terribly for their safety while federal law enforcement are present, especially given that federal law enforcement is not subject to Oregon's anti-profiling legislation and other policing policies, and her family's freedom of movement through Portland now is severely restricted.

34.    Representative Bynum also is the Chair of the House Judiciary Committee, which oversees, creates and modifies state civil and criminal laws; oversees the judicial system; and sets the certification and licensure requirements for criminal justice public safety professionals, including Portland police officers. As a legislator, she makes and enacts laws, including on issues of law enforcement. She also has introduced and shepherded significant law enforcement legislation. Defendants' violations of the Tenth Amendment frustrated her right and ability to set state law enforcement policy applicable in Portland and throughout the state of Oregon. By infringing upon the sovereignty of the State of Oregon, defendants have diminished Representative Power's ability to establish law enforcement policy as her constituents direct.

35.    Furthermore, in her capacity as a citizen, Representative Bynum, and her children, have the right to be policed solely by state and local authorities—and by federal authorities only to the extent authorized by valid federal law, federal regulation or the Federal Constitution. And she has the right as a citizen to gather with political protesters, to participate in political protest, and to observe political protest, all of which the defendants seek to chill or prevent—and have chilled and prevented, in the case of Rep. Bynum—through their First Amendment-suppressive activities.

**F.    Defendant Federal Agencies**

36.    Defendant United States Department of Homeland Security is a Cabinet-level department of the Federal Government. Its stated missions involve anti-terrorism, border security, immigration and customs. It was created in 2002, combining 22 different federal departments and

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

agencies into a single Cabinet agency.

37.    Defendant United States Customs and Border Protection is an agency within the Department of Homeland Security. Its stated mission is: "[t]o safeguard America's borders thereby protecting the public from dangerous people and materials while enhancing the Nation's global economic competitiveness by enabling legitimate trade and travel."

38.    Defendant Federal Protective Service is another agency within and under the control of the Department of Homeland Security. Its stated mission on its website is "To prevent, protect, respond to and recover from terrorism, criminal acts, and other hazards threatening the U.S. Government's critical infrastructure, services, and the people who provide or receive them."

39.    Defendant United States Marshals Service is an agency within and under the control of the United States Department of Justice. According to a Fact Sheet on its website, "it is the enforcement arm of the federal courts, involved in virtually every federal law enforcement initiative."

<u>**GENERAL ALLEGATIONS**</u>

40.    On May 26, 2020, a Minneapolis police officer killed George Floyd while three other police officers watched and did nothing.

41.    That same day, protests erupted across the United States. Most of the protesters acted peacefully. Some of them did not.

A.    <u>**Local Authorities, Accountable to Oregonians, Address the George Floyd Protests.**</u>

42.    The protests have continued since May 26. The vast majority of the hundreds-of-thousands of protesters across the county have acted peacefully.

43.    The situation in Portland has been no different. Tens of thousands of Portlanders have protested peacefully, while some have resorted to vandalism. The Portland Police Bureau

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

also has alleged that some of the protestors have committed acts of violence.

44.    With respect to the vandalism and alleged violence: local law enforcement, aided by the Oregon State Police and other state agencies, have been handling the situation.

45.    The law enforcement response has been (until now) an Oregon-based response accountable to Oregonians. Indeed, over the course of the protests of the past several weeks, the Portland Police Bureau and state agencies have altered their approaches in response to local criticism and to the concerns of the citizens of Portland and Oregon.

46.    That is how democracy works in our federal republic. The Tenth Amendment reserves to the States and their people the right to self-govern absent the legitimate exercise of federal power:

> "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

47.    This foundational principle—that the states and the Federal Government share power—is federalism.

48.    Justice Kennedy, writing for a unanimous Supreme Court and affirming that individuals may invoke the Tenth Amendment to challenge federal laws and actions, described the purpose of federalism:

> "The federal system rests on what might at first seem a counterintuitive insight, that freedom is enhanced by the creation of two governments, not one. The Framers concluded that allocation of powers between the National Government and the States enhances freedom, first by protecting the integrity of the governments themselves, and second by protecting the people, from whom all governmental powers are derived . . . . [F]ederalism secures to citizens the liberties that derive from the diffusion of sovereign power.
>
> Some of these liberties are of a political character. The federal structure allows local policies more sensitive to the diverse needs of

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

> a heterogeneous society, permits innovation and experimentation, enables greater citizen involvement in democratic processes, and makes government more responsive by putting the States in competition for a mobile citizenry. Federalism secures the freedom of the individual. It allows States to respond, through the enactment of positive law, to the initiative of those who seek a voice in shaping the destiny of their own times without having to rely solely upon the political processes that control a remote central power.
> [. . . .]
>
> By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power. When government acts in excess of its lawful powers, that liberty is at stake."

*Bond v. United States*, 564 U.S. 211, 220-22 (2011) (quotations and citations omitted)

**B.** **The President Announces in Many Ways His Desire to Quell Civil Protests With Force Through the Use of the Military or Through Plenary Policing.**

49.     Without Congressional authorization, and without invoking any specific power granted to him, the President of the United States decided to use the power of the federal government to quell protests occurring throughout the country, including in Portland.  He announced his intentions over and over.

50.     On June 1, 2020, the President clearly warned of the militarizing of the streets of Portland, Oregon that soon followed:

> "Mayors and governors must establish an overwhelming law enforcement presence until the violence has been quelled . . . . If a city or state refuses to take the actions that are necessary to defend the life and property of their residents, then I will deploy the United States military and quickly solve the problem for them."

https://www.whitehouse.gov/briefings-statements/statement-by-the-president-39/ (accessed 07/18/2020).

51.     On June 10, 2020, the President continued stating his plan to engage in plenary

Page 14 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

federal law enforcement – conducting general policing in a state's space, without an identifiable federal interest.  That day, he directed the Mayor of Seattle, in response to the establishment of the Capitol Hill Autonomous Zone there, "Take back your city NOW.  If you don't do it, I will.  This is not a game.  These ugly Anarchists must be stooped [sic] IMMEDIATELY.  MOVE FAST!" @Donald    J.    Trump,    Twitter    (June    11,    2020,    11:08    a.m.), https://twitter.com/realDonaldTrump/status/1271142274416562176.

52.    At a June 21, 2020 rally in Tulsa, Oklahoma, the President complained that in Portland, Oregon, demonstrators had burned an flag, apparently unaware of or indifferent to the fact that The United States Supreme Court reaffirmed that flag-burning is constitutionally protected speech in *Texas v. Johnson*, 491 U.S. 397 (1990):

> "Two days ago, leftist radicals in Portland, Oregon ripped down a statue of George Washington and wrapped it in an American flag and set the American flag on fire."

53.    On June 26, 2020, the President promised "retribution" against the "agitators" on national television.  When asked in a public forum on Fox News "what steps is the Administration taking to give us back our streets," the President stated "And at some point, there's going to be retribution because there has to be. These people are vandals, but they're agitators, but they're really — they're terrorists, in a sense."    https://www.politico.com/news/2020/06/26/trump-retribution-protesters-statues-340957

54.    At his July 4, 2020 rally at Mt. Rushmore, the President announced that he was "deploying federal law enforcement to protect our monuments, arrest the rioters, and prosecute offenders    to    the    fullest    extent    of    the    law."    https://www.whitehouse.gov/briefings-statements/remarks-president-trump-south-dakotas-2020-mount-rushmore-fireworks-celebration-keystone-south-dakota/ (accessed 07/18/2020). The context of that statement makes clear that he

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

was referring generally to statues and symbols "of our national heritage" more broadly, and not to federal property.  And the reference to arresting rioters, which does not have any stated nexus to federal property or crimes, is a clear foreshadowing of the agencies' attempt at exercising plenary policing authority away from a federal situs, as they since have in Portland.

55.    On July 20, 2020, the President made clear that the policing conducted by agencies he directs is aimed at curtailing political expression he does not like.  The President stated, "These people are not protesters, these people are anarchists. These are people that hate our country and we're not going to let it go forward."  The President has thus defined the law enforcement mission of the defendants as causing the cessation of expression by "people that hate our country." https://www.foxnews.com/politics/trump-vows-to-send-federal-agents-dhs-chicago        (accessed July 22, 2020).

56.    The President's threats of "retribution" against "agitators" – which singles out expression and organizing – and his desire to squelch "people that hate our country" – which singles out sentiment and not crime – strongly supports the inference that defendants have a program and practice of taking people off the streets for purposes of chilling expression offensive to the federal government.   https://www.npr.org/2020/07/17/892393079/dhs-official-on-reports-of-federal-officers-detaining-protesters-in-portland-ore (accessed July 25, 2020). So does defendant Acting Director of the Department of Homeland Security Chad Wolf's statement that his agency's officers "are having to go out and proactively arrest individuals" in Portland. Compare *Minority Report* (S. Spielberg, director, 2002) (warning of dystopian future in which a department of precrime arrests people before they are expected to commit crimes as one at odds with free will and human dignity).

Page 16 – FIRST AMENDED COMPLAINT
4811-2460-0259

**C.**      **The Federal Government Complies with the President's Directive and Engages in a Campaign of Speech-Suppressive General Policing of Portland.**

57.      The President's officials have indulged the President's diktat to punish dissent. The Defendant federal law enforcement agencies and personnel arrived in force in Portland on or around July 5.   Since then federal agents, including but not limited to the defendants in this action and persons acting at their direction, began engaging in a program of retributive "policing" that consists variously of: (1) attempts at asserting a plenary power to police Portland away from and out of sight of the Hatfield courthouse; (2) policing in manners evidencing a design to deter First Amendment protected activity, including attacks on press, Fourth Amendment-violative brutality, gassing persons without cause, and abducting suspected protesters off of Portland streets—even though such protestors were acting peacefully.  These different clusters of "retribution" include:

**1.**      **Federal Agents Conduct Plenary Policing Operations – Away From the Federal Facilities They Are Supposedly Defending – in Portland.**

**a.**      **Operations Across a Wide Swath of Downtown Portland on the Night of July 11.**

58.      On the night of July 11, 2020, federal agents conducted a patrol. through an area of downtown Portland. that was in the nature of pacification. It lacked any apparent link to a federal situs or the curtilage around a federal situs.

59.      A group of federal officers began a patrol near a federal site and walked three blocks in one direction, and then executed a turn and walked three blocks in another direction.

60.      This patrol comprised six linear blocks and took approximately four minutes of brisk walking.

61.      During the patrol, the federal agents cleared a city park at Lownsdale Square.  They also shot a tear gas cannister directly at a person riding a scooter.

Page 17 – FIRST AMENDED COMPLAINT
4811-2460-0259

62.     There was no federal building then being attacked to which this patrol logically responded.  The patrol was not in the nature of "hot pursuit" of a malefactor from a federal situs broadly through Portland.  It was simply a patrol of armed federal agents some number of blocks from a federal situs, not in immediate reaction to any public emergency at a federal situs.

**b.      Federal Agents Engage in Plenary Policing**

63.     There are many other reports and depictions of federal agents conducting plenary policing away from and out of the sight of the Hatfield Courthouse. By way of example: https://www.nytimes.com/video/us/100000007243995/portland-protests-federal-government.html (accessed July 26, 2020); https://www.nytimes.com/2020/07/25/us/portland-federal-legal-jurisdiction-courts.html?action=click&module=Top%20Stories&pgtype=Homepage (accessed July 26, 2020); https://twitter.com/hungrybowtie/status/1287314986943930368 (accessed July 26, 2020); https://m.facebook.com/randy.blazak/videos/10159970769049307/ (accessed July 27, 2020).

**c.      Federal Agents Engage in Plenary Policing By Patrolling and Picking Up Persons For Questioning, Including But Not Limited to the Documented Instance of Mark Pettibone.**

64.     Federal agents have followed a program of abducting persons outside the jurisdiction of federal law enforcement, including but not limited to Mark Pettibone.  Mr. Pettibone documented his abduction in a declaration in *Rosenblum v. U.S. Dep't of Homeland Security*, Civ. No. 3:20-cv-01161-MO (D. Or.), ECF 7.

65.     Those abducted, including Mr. Pettibone, were not attacking federal property or personnel.

66.     Those abducted, including Mr. Pettibone, were not on federal property at the time

Page 18 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

they were abducted. In fact, those abducted reportedly were walking home, on city streets, after having peacefully protested.

67.     When conducting the abductions of Portlanders, the federal agents do so without first obtaining arrest warrants.

68.     Mr. Pettibone testified in his declaration that he had seen a video of another Portlander being picked up in a like manner – by individuals in camouflage fatigues, placing them in an unmarked van – and that it was not him.

69.     In the July 22, 2020 hearing on the Oregon Attorney General's Motion for Temporary Restraining Order, the same federal defendants through their counsel, the Department of Justice, offered no justification for the arrest of Mr. Pettibone when confronted with his declaration.

70.     Given the Government's failure despite fair notice to controvert the Oregon Attorney General's showing that Mr. Pettibone was arrested while engaging in no illegal activity and apparently without probable cause, it is clear that Mr. Pettibone, among others, was arrested in violation of the Fourth Amendment, and not within any federal curtilage making rational the federal exercise of police power against him in the first place.

        **d.**      **<u>Deputy Secretary Cuccinelli of the Department of Homeland Security Admits Federal Agents Are Picking Up Protesters in Unmarked Vehicles, Sometimes Incorrectly.</u>**

71.     Consistent with Pettibone's testimony, Ken Cuccinelli, the Deputy Secretary of the defendant Department of Homeland Security, was asked in a July 17 interview with National Public Radio that federal agents used unmarked vehicles to pick up protesters in U.S. cities, and admitted this occurs, stating, "Well, in Portland, they have." He also admitted that someone taken

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

into custody in this manner and questioned was "not the right person, and that person was released," thus confirming that the federal practice has caused and can cause the detention of peaceful protesters, engaged in the exercise of their First Amendment freedoms. https://www.npr.org/2020/07/17/892393079/dhs-official-on-reports-of-federal-officers-detaining-protesters-in-portland-ore (accessed July 22, 2020).

72.    Plaintiffs do not challenge defendants' authority to guard, lawfully, federal property and personnel. Rather, plaintiffs ask the Court to honor and restore the balance of power the Framers put in place through the Tenth Amendment.

2.    **The Federal Defendants Conduct a Pattern of Policing in Portland to Eliminate and to Deter Speech, Including Against the Government Itself.**

73.    While the federal government may protect its property and personnel, the federal government is constrained by the Constitution from policing the City of Portland broadly speaking, and there is no positive delegation of authority in any law that makes the federal government's recent forays into general policing in Portland either legal or constitutional. The Court should enjoin the defendants from conducting law enforcement activities unless defendants lawfully are enforcing a validly-enacted federal law, or unless they are acting within the immediate vicinity of federal facilities in order to protect those facilities.  If defendants wish to seize someone, then they must obtain a warrant, have probable cause, and otherwise comply with the Constitution.

a.    **Time and Again, Federal Agents Target and Attack Members of the Press, Making Clear the Design of the Federal Defendants to Injure and Frighten Journalists to Suppress Speech.**

74.    In a separate suit in which Judge Simon has issued a temporary restraining order against assaults on clearly identified journalists, there has been proof of many discrete instances

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

of federal agents – working within the defendant federal agencies – targeting journalists.

75.    On July 15, 2020, federal agents shot a tear gas canister directly at clearly marked journalist Justin Yau, while he was standing 40 feet from protesters to make clear he was not part of their protest. *Index Newspapers v. City of Portland, et al.*, Civ. No. 3:20-cv-1035-SI, ECF 56, at ¶¶ 3-6 (Yau Decl.).

76.    On July 19, 2020, federal agents assaulted clearly-marked photojournalist Jungho Kim. They pushed protesters away from the area in which he was taking pictures. Then, while he was 30 feet from the federal agents and near no one, a federal agent shot him just below his heart with a less lethal projectile munition. He was uninjured because he wore a ballistic vest. Separately, he also saw federal agents firing munitions into a group of press and legal observers. *Index Newspapers v. City of Portland, et al.*, Civ. No. 3:20-cv-1035-SI, ECF 62, at ¶¶ 5-7 (Kim Decl.).

77.    On July 19, 2020, federal agents assaulted Associated Press photojournalist Noah Berger while he was covering protests. Carrying two large professional cameras and two press passes, he was initially shot twice with less lethal munitions. *Index Newspapers v. City of Portland, et al.*, Civ. No. 3:20-cv-1035-SI, ECF 72, at ¶¶ 1-4 (Berger Decl.).

78.    But this group of federal agents was just getting started attacking Mr. Berger. As the federal agents "rushed" an area he was photographing, he identified himself as press and retreated from the rushed area, saying he was leaving. While holding his press pass and stating he was with the press, he was struck by one federal agent – then two others joined – and he was struck many times with batons. Not content to club the photographer, an agent dispensed pepper spray into his face. (Berger Decl, ¶¶ 7-9.)

79.    On July 23, Judge Simon of this Court enjoined the use of physical force against journalists, unless those journalists are reasonably believed then to be engaging in a crime. *Index*

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

*Newspapers v. City of Portland, et al.*, Civ. No. 3:20-cv-1035-SI, ECF 84, Temporary Restraining Order, at page 18, paragraph 1.

80.     In the early hours of the morning of July 24, after entry of that Order, federal agents shot in the face with some form of projectile a very clearly marked working journalist, standing with camera equipment at a cut-out in the wire fence outside the Hatfield courthouse.  The video of her shooting reveals no proximate protesting, but in any event, with agents decamped at some distance within the Hatfield courthouse compound area, the projectile was not shot in defense of officer safety and was instead an intended assault on the very clearly marked journalist.

    **b.**  <u>**The Department of Homeland Security Bans Drones in All of Portland, to Hide Its Illegal Conduct and to Deter Reporting of It.**</u>

81.     The Department of Homeland Security has issued a temporary flight restriction over the entire City of Portland for unmanned aircraft systems.  This directive, like the activities of the federal defendants themselves, is not reasonably spatially constrained.

82.     Defendant the Department of Homeland Security has thus further inhibited surveillance and viewing of the area suddenly subject to aggressive federal occupation and policing.  The restriction was put in place on July 16 and ends on August 16.

    **c.**  <u>**The Violent, Fourth Amendment Violative Assault on 53 Year Old Navy Veteran Christopher David.**</u>

83.     On July 18, 2020, federal agents violently assaulted Navy veteran Christopher David.  David, wearing a Navy sweatshirt and Navy logos in the hopes of disarming the agents enough to speak with them, approached a group of federal agents and stood with his hands empty and at his sides.  David has stated that he asked whether the agents were enlisted and asked why they were not obeying an oath to the Constitution in their actions.

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

84.    As their response, one federal agent clubbed David with a baton three times, in the torso and lower body, a second approached and sprayed a chemical agent in his face, and a third clubbed him twice from behind.

85.    According to public reports, David's hand was broken in two places by the federal agents and required surgery.

### d.    The Unprovoked Shooting and Gassing of Prof. Maureen Healy While She Was Peacefully Protesting in a Group.

86.    On July 21, Professor Maureen Healy, the Chair of the History Department of Lewis and Clark College, and a teacher of European History with a specialization in the rise of fascism in 20th Century Europe, was peacefully protesting when federal agents gassed her and shot her in the head, concussing her.

87.    Prof. Healy was in what she described as "large crowd of ordinary folks," led by "Black Lives Matter voices," that was "singing songs," "chanting," and saying in memory names of Black people killed by police, before observing a moment of silence at the George Floyd mural on SW Yamhill Street.

88.    As Prof. Healy wisely stated after the fact, "I am knowledgeable about the historical slide by which seemingly vibrant democracies succumbed to authoritarian rule. Militarized federal troops are shooting indiscriminately into crowds of ordinary people in our country. We are on that slide."

89.    The Tenth Amendment secures rights to the states and the people, and as Justice Kennedy wrote in 2011 in *Bond*, it is a guarantee of individual liberties against "arbitrary power." 564 U.S. at 222.  Those other liberties must include the Fourth Amendment right to freedom from assault by federal officers who lack probable cause and who should not be permitted under the Tenth Amendment to attempt the general policing of downtown Portland.

Page 23 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

e.      **The Unprovoked Shooting, Gassing, and Pursuit with Drawn Weapons of Amanda Dunham.**

90.     On July 20, 2020, Amanda Dunham was demonstrating peacefully near the Multnomah County Justice Center – not the Hatfield Courthouse – and thus in a local/state, and not federal, zone of interest to begin with. Dunham was protesting in support of the Black Lives Matter movement and to express her opposition to the presence of federal law enforcement in Portland.

91.     Dunham was unarmed. She neither caused nor attempted to cause any damage to any property of any kind. She did not witness any protestor behave in a violent or threatening manner.

92.     That did not stop the federal agents from attacking the peaceful protesters.  The federal agents gave no warning, and made no announcement purporting to declare the gathering unlawful.

93.     The federal agents instead swarmed into the crowd of demonstrators, shooting rubber bullets and deploying tear gas.  During their assault on the protestors, they struck Dunham from behind with three rubber bullets in her back, upper arm, and elbow, causing extreme pain and seriously injuring her elbow.

94.     Rather than pursue anyone in particular, the federal agents indiscriminately chased off protesters, continuing to shoot rubber bullets and deploy tear gas. The agents followed already-dispersed protesters blocks away.

95.     Without ever arresting or speaking to Dunham, the federal agents casually terrorized her. Having chased her two and a half blocks from the Hatfield Courthouse to where her car was parked, at the intersection of 3rd Avenue and Taylor Avenue, federal agents blocked the intersection where her car was parked. Multiple federal agents trained their weapons on Dunham.

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

96.     When Dunham turned the running lights on her car without starting her engine, Dunham could see the beams from the laser scopes of their weapons on her dashboard. Dunham turned her running lights off and was afraid of being shot at or killed, despite causing no damage and doing nothing wrong.

97.     Underscoring their lack of probable cause to detain Dunham, the federal agents did not arrest, question, or detain Dunham. They simply dispersed a peaceful public assembly without warning, chased protesters several blocks, and brandished lethal force, without furnishing even a pretextual law enforcement purpose.

        **f.**      **The Unprovoked Gassing of a Crowd of Demonstrators, Including Portland Mayor Ted Wheeler.**

98.     On July 22, 2020, at 11 p.m., Portland Mayor Ted Wheeler engaged in public assembly with constituents protesting near the Hatfield Courthouse.

99.     The crowd in which the Mayor was standing in dialogue with Oregonians about law enforcement and the federal presence was gassed by federal agents.

100.    The Mayor has commented publicly that he "saw nothing that provoked this response." Thus, like Mark Pettibone, the Mayor did not himself engage in unlawful activity, nor did he see unlawful or disorderly behavior that would have justified the gassing of the crowd in which he stood on July 22, 2020.

### FIRST CLAIM FOR RELIEF

(Violation of Tenth Amendment)

(By all plaintiffs against all defendants)

101.    Plaintiffs reallege, and incorporate by reference, the allegations of paragraphs 1 to 100.

102.    The Tenth Amendment to the United States Constitution reserves the police power

Page 25 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

to the states.

103.    Stated another way: given the Tenth Amendment, the United States government lacks the plenary power to police within the states.

104.    And while, given the Tenth Amendment, Congress cannot give the federal government the plenary power to police within the states, of relevance today in Portland, Congress has made clear just how limited its grant of power is to the Department of Homeland Security to arrest persons.

105.    To avoid turning Department of Homeland Security officers into free-range plenary police within the states, in 40 United States Code Section 1315 ("Section 1315"), Congress conferred upon DHS officers the very clearly delimited power to make warrantless arrests only of persons who the officer (1) directly witnesses committing a federal crime, or (2) reasonably believes is committing or has committed federal felonies.

106.    Section 1315 provides:

> (2)    Powers.—While engaged in the performance of official duties, an officer or agent designated under this subsection may—
>
> (A)    enforce Federal laws and regulations for the protection of persons and property;
>
> […]
>
> (C)    make arrests without a warrant for any offense against the United States committed in the presence of the officer or agent or for any felony cognizable under the laws of the United States if the officer or agent has reasonable grounds to believe that the person to be arrested has committed or is committing a federal felony.

107.    By conducting law enforcement activities on the sidewalks and streets of Portland—as opposed to on the premises or within the curtilage of government property—

Page 26 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

defendants have encroached upon powers explicitly reserved to the State of Oregon, and to Oregon's citizens, pursuant to the Tenth Amendment.

108.    Illustrating their violation of the Tenth Amendment, the federal authorities have conducted arrests that are not within the authorization of Section 1315.

109.    The conduct of law enforcement activities described in this complaint is not justified on the facts of the particular instances of policing by the doctrine of hot pursuit, under which there is continued and direct contact with someone observed in the midst of committing a federal crime.

110.    Defendants conducted such law enforcement activities under color of federal law.

111.    Each plaintiff has standing to bring this claim because each has suffered cognizable injuries that are redressable through injunctive relief, and the Tenth Amendment confers a substantive, personal right upon each plaintiff. *See, e.g., Bond v. United States*, 564 U.S. 211, 220-22 (2011). Each plaintiff has been deprived the application, and protections, of Oregon law, and the right to be policed by local police accountable to the local community.

112.    There is no adequate remedy under state law.

113.    The federal defendants should be prevented by temporary, preliminary, and permanent injunction from policing in violation of the Tenth Amendment.  This means not conducting general policing other than on federal property or curtilage, and only pursuing persons with identifiable probable cause in a continuous sequence of events from federal property or curtilage.

## SECOND CLAIM FOR RELIEF

(Violation of First Amendment, Alone or in Combination with the Tenth Amendment)

(By all plaintiffs against all defendants)

114.    Plaintiffs reallege, and incorporate by reference, the allegations of paragraphs 1 to

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

113.

115.    Through the foregoing course of conduct, the defendants have through federal policing sought to silence, cancel, and thwart speech and assembly while it occurs, in violation of the First Amendment.

116.    Through the foregoing course of conduct, the defendants have through federal policing sought to silence, cancel, and thwart speech and assembly while it occurs specifically because of its viewpoint, in violation of the First Amendment.

117.    Through the foregoing course of conduct, and by silencing, canceling, and thwarting protest speech and protest assemblies while they occur, the defendants have actively imposed a regime of federally acceptable speech, in violation of the First Amendment.

118.    Through the foregoing course of conduct, the defendants have through federal policing sought to deter speech because of its viewpoint, in violation of the First Amendment.

119.    This course of conduct has chilled each of the plaintiffs from exercising their First Amendment rights, by inducing them not to participate, or not to fully participate, in the protests under continuing attack from the federal forces in Portland, and inducing them not to attend or observe those protests.

120.    That chilling of participation in protests and chilling of public assembly, while the seeming object of the defendants' course of conduct, violates the First Amendment rights of speech, assembly and political participation enjoyed by all of the plaintiffs.

121.    The defendants' violation of the First Amendment rights of plaintiffs and all Oregonians stands separate and apart from the defendants' Tenth Amendment violations as they conduct plenary policing in downtown Portland.

122.    Yet *Bond* reminds us that the Tenth Amendment functions to guarantee citizens their liberties and to permit citizens redress for injuries they suffer.  For that reasons, plaintiffs'

Page 28 – FIRST AMENDED COMPLAINT
4811-2460-0259

First Amendment injuries are redressable in this suit both in and of themselves, and also through plaintiffs' claims under the Tenth Amendment. This is so because the Tenth Amendment is a structural principle in service and protection of other constitutional liberties.

123.    Even if this Court were to determine that the conduct challenged in this Complaint provides no basis for liability under the Tenth Amendment, it nonetheless remains independently actionable as a claim for violation of the First Amendment.

124.    This Court should bar the federal defendants by temporary, preliminary, and permanent injunction from policing in violation of the First Amendment. This means only arresting or using force against identified individuals for whom there is probable cause to believe the individual is committing a federal crime. It also means not shooting identified members of the press who are not then committing crimes. It also means not conducting law enforcement sweeps beyond federal property or curtilage, to create intendedly "federal" conflicts with people away from the federal land that is the only justification for the presence of the federal forces, so as to allow federal forces to engage American civilians in a quasi-military manner off the grounds or curtilage of the Hatfield Courthouse.

## THIRD CLAIM FOR RELIEF

(Violation of Fourth Amendment, Alone or in

Combination with the First and Tenth Amendments)

(By all plaintiffs against all defendants)

125.    Plaintiffs realleges, and incorporates by reference, the allegations of paragraphs 1 to 124.

126.    The beatings brazenly conducted on camera, the terrorizing of peaceful protesters, the shootings of protesters, journalists, and observers alike, the abduction of Mark Pettibone and others, all of the foregoing conduct violates the Fourth Amendment.

Page 29 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

127.    Through all of the foregoing described in this complaint, the defendants have through federal policing deprived Oregonians of their rights not to be arrested without probable cause, and to be secure in their persons, in violation of the Fourth Amendment.

128.    By supplanting Oregon's own policing – making good on the President's threat on June 1 and 10 that the cities will "do it" or "he will" – the federal defendants have simultaneously both deprived Oregonians of their Tenth Amendment rights to determine their own policing, and have inflicted particular, Fourth Amendment-grounded injuries on plaintiffs and all Oregonians while violating the Tenth Amendment.

129.    All of this merits an injunction prohibiting further violations of the Tenth Amendment, and of the Fourth Amendment in the conduct of the federal policing actions now underway in Portland. Only by barring violations of the Fourth Amendment which in turn chill and deter speech and assembly can this Court end the promised and First Amendment-violative federal "retribution" for protesting, and restore First Amendment-guaranteed liberty to the American public square.

## <u>FOURTH CLAIM FOR RELIEF</u>

(Violation of First Amendment Right of Free Exercise)

(By First Unitarian Portland against all defendants)

130.    Plaintiffs realleges, and incorporate by reference, the allegations of paragraphs 1 to 129.

131.    Defendants have deprived Portlanders the right to protest peacefully, and to transit peacefully to and from protest locations. Defendant have done so through, among other things, unwarranted seizures and detentions, including stuffing people into unmarked vehicles, performed under color of federal law, and the foregoing pattern of aggression against press, observers, and protesters, often in violation of the First Amendment or the Fourth Amendment.

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

132.     Defendants have not indicated that they will stop these practices.

133.     There is no adequate remedy under state law.

134.     Protest is a key aspect of First Unitarian's faith, mission and religious practice.

135.     By abducting people peacefully protesting, transiting to or from protests, or observing a protest without even participating, defendants have chilled, and will continue to chill, First Unitarian's pursuit of its religious mission and faith, and the exercise of that faith by First Unitarian's congregants in Portland.

136.     For these reasons, this Court should enjoin the federal defendants of the scope of conduct described in Paragraphs 108, 118, and 129.

## FIFTH CLAIM FOR RELIEF

(Violation of First Amendment, Alone or in Combination with Tenth Amendment)

(By Representative Bynum and Representative Power against all defendants)

137.     Representatives Bynum and Power reallege, and incorporate by reference, the allegations of paragraphs 1 to 130, including the allegations of other violations of the First Amendment and Tenth Amendment, separately or in combination.

138.     Representatives Bynum and Power have additional First and Tenth Amendment injuries specific to their governmental roles.

139.     Oregon's sovereignty consists in substantial part of its authority to make laws that govern its citizens and the public spaces in Oregon.  See Oregon Const., Art. IV, Sec. 1.

140.     Thus, on one level, the actions of the federal government that displace Oregon's police power displace laws of general application and appropriate the lawmaking role of the Oregon legislature by substituting a different and novel system of law enforcement.

141.     Moreover, Article I, Section 22 of Oregon's Constitution provides:

Page 31 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

**Section 22.  Suspension of operation of laws.**  The operation of the laws shall never be suspended, except by the authority of the Legislative Assembly.

142.    Thus, if there was to be a cancellation of the regime of enforcing generally applicable criminal laws in downtown Portland in favor of some other authority – including a federal authority, which would be permissible for Oregon to decide – Oregon's constitution teaches that only the Oregon Legislature gets to decide that. The President does not get to decide that, given the Tenth Amendment, nor do the respective secretaries of the defendant federal agencies. They cannot suspend the operation of Oregon law in favor of federal law where and when it suits them.

143.    In this further way, the conduct of the federal agencies is in derogation of the Tenth Amendment and very specifically in derogation of the constitutional role of Oregon's legislators, whose authority to suspend the operation of laws the federal government has appropriated for itself.

144.    For these reasons, Representatives Bynum and Power are therefore are separately entitled to an injunction of the same scope and attributes described in Paragraphs 108, 118, and 129.

## SIXTH CLAIM FOR RELIEF

(28 U.S.C. § 2201—Declaratory Judgment)

(By all plaintiffs against all defendants)

145.    Plaintiffs reallege, and incorporate by reference, the allegations of paragraphs 1 to 138.

146.    There is an actual controversy among the parties, inasmuch as one or more of the defendants has engaged in actions violating plaintiffs' civil rights and none of the defendants has either acknowledged such actions or agreed to stop them. In fact, defendants have stated that they

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

intend to continue such actions.

147.    Plaintiffs therefore are entitled to a declaration that defendants' actions are, or have been, unconstitutional for all of the above-stated reasons, and to an injunction against committing the acts alleged herein in the future, of the same scope and attributes described in Paragraphs 108, 118, and 129.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for relief as follows:

A.    A judgment declaring that defendants are, through the foregoing course of conduct alleged in this Complaint:  (1) violating the Tenth Amendment rights of plaintiffs by policing Portland beyond federal property or its curtilage; (2) violating the First Amendment rights of plaintiffs; (3) violating both the First and Tenth Amendments jointly; and (4) violating the Free Exercise Clause of the First Amendment;

B.    An injunction permanently restraining defendants, and any persons working in concert with them, from:

(1)    consistent with the Tenth Amendment, engaging in law enforcement activities other than in the immediate defense of federal personnel or property on federal property or its curtilage, except to the extent necessary to remove an imminent threat or to arrest someone violating federal law in a manner compliant with 40 U.S.C. § 1315(b)(2)(C) ("Section 1315");

(2)    consistent with the Fourth Amendment and Section 1315, seizing or arresting individuals within the jurisdiction of this Court without either (a) a warrant, (b) the arresting officer seeing the federal crime allegedly committed or (c) the arresting officer having probable cause to believe that the arrested person committed a federal felony;

(3)    making warrantless arrests in violation of the Fourth Amendment;

Page 33 – FIRST AMENDED COMPLAINT
4811-2460-0259

Snell & Wilmer
One Centerpointe Drive Ste 170
Lake Oswego, Oregon 97035
503.624.6800

(4)      consistent with the First Amendment, the Fourth Amendment, Section 1315 and the orders of any judicial officer of this District Court, physically contacting and approaching protestors, medics, journalists, or other observers of protests at a distance of more than 100 yards from the property line of the Hatfield Courthouse unless the protestor, medic, journalist, or other observers of protests is then presently injuring the structure of the Hatfield Courthouse, or injuring an officer defending the Hatfield Courthouse at a distance of less than 100 yards from the property line of the Hatfield Courthouse.

(5)      consistent with the First Amendment, Fourth Amendment, Section 1315 and the orders of any judicial officer of this District Court, striking with batons, shooting with projectiles, or pushing to the ground persons within 100 yards of the property line of the Hatfield Courthouse who are not resisting instructions from the officer engaging those persons, unless there has been a prior instruction for a crowd to clear the area containing the person with time sufficient for the crowd to disperse;

(6)      consistent with the First Amendment, Fourth Amendment and Section 1315 and the orders of any judicial officer of this District Court, striking with batons, gassing, shooting with projectiles, or pushing to the ground persons who are not resisting instructions from the officer engaging those persons, more than 100 yards from the property line of the Hatfield Courthouse; and

(7)      consistent with the First and Fourth Amendments and Section 1315 and the orders of any judicial officer of this District Court, pursuing protestors who are not personally engaged in violence toward the Hatfield Courthouse or an officer guarding it beyond the distance of 100 yards from the property line of the Hatfield Courthouse.

/ / /

/ / /

Page 34 – FIRST AMENDED COMPLAINT
4811-2460-0259

C.    Attorneys' fees and expenses pursuant to 28 U.S.C. § 2412(b); and

D.    Such other relief as this Court deems just and proper.


Dated: July 27, 2020                    SNELL & WILMER L.L.P.


                                        By /s/ Clifford S. Davidson
                                        Clifford S. Davidson, OSB No. 125378
                                        Andrew M. Jacobs (*pro hac vice*)

                                        Attorneys for Plaintiffs

Page 35 – FIRST AMENDED COMPLAINT
4811-2460-0259