IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WESTERN STATES CENTER, INC., an Oregon public benefit corporation; THE FIRST UNITARIAN CHURCH OF PORTLAND, OREGON, an Oregon religious nonprofit Corporation; SARA D. EDDIE, an individual; OREGON STATE REPRESENTATIVE KARIN A. POWER, an elected official; and OREGON STATE REPRESENTATIVE JANELLE S. BYNAM, an elected official,<br><br>        Plaintiffs,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FEDERAL PROTECTIVE SERVICE; and UNITED STATES MARSHALS SERVICE,<br><br>        Defendants. | Case No. 3:20-cv-01175-JR<br><br>FINDINGS AND RECOMMENDATION |

RUSSO, Magistrate Judge:

Defendants the U.S. Department of Homeland Security, U.S. Customs and Border Protection, Federal Protective Services, and U.S. Marshals Service move to dismiss plaintiffs Western States Center, First Unitarian Church of Portland, Sara Eddie, Karin Power, and Janelle Bynam's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). In addition, defendants seek to stay discovery while the Court determines the sufficiency of the pleadings. For the reasons set forth below, defendants' motions should be denied.

Page 1 – FINDINGS AND RECOMMENDATION

## BACKGROUND

On July 21, 2020, plaintiffs – three residents of Portland, Oregon (including two Oregon state representatives) and two Portland-based organizations – initiated this lawsuit. On July 27, 2020, plaintiffs filed their First Amended Complaint alleging two categories of claims centering on defendants' response to the protests occurring outside the Mark O. Hatfield U.S. Courthouse ("U.S. Courthouse") in downtown Portland: (1) deprivation of First Amendment rights[1]; and (2) deprivation of Tenth Amendment rights. See generally First. Am. Compl. (doc. 14). Plaintiffs seek declaratory relief as to all claims, as well as to permanently enjoin defendants from:

> engaging in law enforcement activities other than in the immediate defense of federal personnel or property on federal property or its curtilage, except to the extent necessary to remove an imminent threat or to arrest someone violating federal law[;] seizing or arresting individuals within the jurisdiction of this Court without either (a) a warrant, (b) the arresting officer seeing the federal crime allegedly committed or (c) the arresting officer having probable cause to believe that the arrested person committed a federal felony[;] physically contacting and approaching protestors, medics, journalists, or other observers of protests at a distance of more than 100 yards from the property line of the Hatfield Courthouse unless the protestor, medic, journalist, or other observers of protests is then presently injuring the structure of the Hatfield Courthouse, or injuring an officer defending the Hatfield Courthouse at a distance of less than 100 yards from the property line of the Hatfield Courthouse[; and] striking with batons, shooting with projectiles, or pushing to the ground persons within 100 yards of the property line of the Hatfield Courthouse who are not resisting instructions from the officer engaging those persons, unless there has been a prior instruction for a crowd to clear the area containing the person with time sufficient for the crowd to disperse.

Id. at pgs. 33-34.

---

[1] Although plaintiffs articulate Free Speech and Free Exercise claims, which are doctrinally distinct, as well as raise allegations under the Fourth Amendment, they assert "essentially" one First Amendment claim for the purposes of these proceedings. Hearing 3 (Oct. 30, 2020) (doc. 62); see also Pls.' Resp. to Mot. Dismiss 29-30 (doc. 81) (plaintiffs conceding they "do not state a standalone Fourth Amendment claim, rather they allege that witnessing these violations has chilled [their] own speech because of the fear that the same fate will befall them for engaging in political protests").

Page 2 – FINDINGS AND RECOMMENDATION

In conjunction with their July 27th First Amended Complaint, plaintiffs moved for a preliminary injunction/temporary restraining order. On August 10, 2020, plaintiffs withdrew their initial request and filed a supplemental motion for preliminary injunction/temporary restraining order ("PI Motion") accompanied by several supporting declarations.

Defendants opposed the PI Motion on the grounds that each category of plaintiff (i.e., individual, representative, and organization) lacked standing due to a failure to allege a particularized and concrete retrospective and prospective injury. Defs.' Resp. to PI Mot. 9-22 (doc. 37). Defendants also argued, in relevant part, that plaintiffs' allegations did not demonstrate any First or Tenth Amendment violation. Id. at 23-32.

District Judge Mosman held two hearings concerning the PI Motion. At the first hearing on October 22, 2020, Judge Mosman explained that he "need[ed] to find standing and then analyze [each claim] under the typical or traditional preliminary injunction standard." Hearing 3-4 (Oct. 22, 2020) (doc. 61). Accordingly, Judge Mosman began the hearing by explicitly and extensively questioning counsel about the jurisdictional parameters of plaintiffs' Fifth and Tenth Amendment claims, including injury-in-fact, causation, and redressability. See, e.g., id. at 4-29. Judge Mosman then heard separate arguments concerning whether either of plaintiffs' claims met the standard for a preliminary injunction. Id. at 30-57.

On October 30, 2020, Judge Mosman held the second hearing regarding the PI Motion, holding that plaintiffs had standing as to both their First and Tenth Amendment claims. Hearing 4-6 (Oct. 30, 2020) (doc. 62). Concerning the First Amendment claim, Judge Mosman found that former President Trump's and then-Acting Secretary Chad Wolf's public statements were sufficient to "satisfy the requirement of a substantial risk of future harm" and specifically evinced a retaliatory motive. Id. at 6. Regarding the propriety of injunctive relief, Judge Mosman

held that, although they were unlikely to succeed on the merits of their Tenth Amendment claim, plaintiffs were likely to succeed on the merits of their First Amendment claim "in a limited way on the retaliation theory here, and that justifies injunctive relief, at least until we can engage in further discovery." Id. at 4-5, 7-9.

Accordingly, on November 2, 2020, Judge Mosman issued a preliminary injunction; however, that injunction was vacated one week later due to the cessation of protest activity surrounding the U.S. Courthouse.

## STANDARD OF REVIEW

Where the court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). The party who seeks to invoke the subject matter jurisdiction of the court bears the burden of establishing that such jurisdiction exists. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992). During a facial attack on the pleadings, the court accepts the well-plead factual allegations as true. Miranda v. Reno, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). During a factual attack on the pleadings, the court may hear evidence regarding subject matter jurisdiction and resolve factual disputes where necessary. Kingman Reef Atoll Invs., LLC v. United States, 541 F.3d 1189, 1195 (9th Cir. 2008).

Similarly, where the plaintiff "fails to state a claim upon which relief can be granted," the action must be dismissed. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). For purposes of a motion to dismiss, the complaint is liberally construed in favor of the plaintiff and its allegations are taken as true. Rosen v. Walters, 719 F.2d 1422, 1424 (9th Cir. 1983). Bare assertions, however, that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be

assumed true." Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

## DISCUSSION

Defendants argue that plaintiffs' complaint should be dismissed for lack of standing and failure to state a claim. Concerning the former, defendants assert that "the operative complaint fails to connect Plaintiffs' unwillingness to attend the protests to any nonspeculative injuries suffered by anyone [or] demonstrate that anyone has standing given the lack of an official policy or officially sanctioned pattern of violations." Defs.' Mot. Dismiss 1 (doc. 72). Regarding the latter, defendants contend that the legal theories underlying plaintiffs' claims are "insufficiently pleaded or baseless." Id. at 1-2. According to defendants, Judge Mosman's prior rulings are "not binding going forward in this case." Id. at 4 (citing S. Or. Barter Fair v. Jackson Cty., Or., 372 F.3d 1128, 1136 (9th Cir. 2004)). Finally, in light of the complaint's purported deficiencies, defendants maintain that "this Court should stay discovery to preserve the parties' resources and avoid unnecessary and inefficient proceedings." Defs.' Mot. Stay Discovery 1 (doc. 73).

As such, defendants largely rely on the same arguments used in opposing plaintiffs' PI Motion. Compare generally Defs.' Resp. to PI Mot. (doc. 37), with Defs.' Mot. Dismiss (doc. 72). There can be no doubt that Judge Mosman fully considered and resolved those arguments in determining that plaintiffs were entitled to a preliminary injunction on their First Amendment claim. While preliminary injunction rulings regarding the merits may not constitute the "law of the case" for the purposes of summary judgment, courts are generally bound by prior judicial

decisions concerning the same subject,[2] especially where, defendants have not cited any change in circumstance or manifest unjustness that would warrant a different outcome. See Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 530 (9th Cir. 2000) ("a judge may set aside or reverse a prior ruling by a colleague in the same case" only if "cogent reasons or exceptional circumstances exist"). Indeed, in the analogous res judicata and collateral estoppel contexts, it is "well-established" that parties may not relitigate previously decided jurisdictional issues surrounding standing. See, e.g., Vandeusen v. Adams, 2007 WL 2891497, *2 n.3 (D. S.C. Sept. 28, 2007) ("[p]laintiffs, having had an opportunity to litigate the question of standing in this case, may not reopen that question in a later proceeding") (citations omitted).

Here, absent a change in law or fact, granting defendants a different ruling via these proceedings before a different judge would run afoul of traditions of comity, as well as foster an appearance of arbitrariness and, by extension, undermine the public confidence in the adjudicatory process. Fairbank, 212 F.3d at 530; see also Tanner Motor Livery, Ltd. v Avis, Inc., 316 F2d 804, 810 (9th Cir. 1963) ("[o]rders of United States Courts, deliberately made, after proper notice and hearing, and subject to review by [the Ninth Circuit], are not to be lightly changed by any judge of the trial court").

---

[2] Namely, the precedent relied on by defendants is limited to merits decisions. See S. Or. Barter Fair, 372 F.3d at 1136 (preliminary injunction decisions about the likelihood of success "are not binding at trial on the merits" because they were "just that – preliminary – and must often be made hastily and on less than a full record") (citations and internal quotations omitted); see also E. Bay Sanctuary Covenant v. Trump, 950 F.3d 1242, 1261-62 (9th Cir. 2020) (even though courts "generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case . . . orders denying or granting preliminary-injunction requests [do] not typically become law of the case [because] the record before a later panel may materially differ from the record before the first panel, such that the first panel's decision eventually provides little guidance as to the appropriate disposition on the merits") (citations and internal quotations omitted). In contrast, defendants here seemingly seek reconsideration of Judge Mosman's thorough and well-reasoned rulings concerning standing (as opposed to the merits of the case) on an identical record and without the benefit of any discovery or subsequent proceedings.

Further, Judge Mosman's findings concerning the substantive merits of plaintiffs' Tenth Amendment claim, or the ultimate unnecessariness of a preliminary injunction, are analytically and legally distinct from the sufficiency of the pleadings. Judge Mosman expressly held that plaintiffs' First Amendment claim was likely to succeed on the merits, strongly implying that the complaint's allegations were sufficient. Although defendants are correct that Judge Mosman described plaintiffs' Tenth Amendment claim as unlikely to succeed on the merits because it "depends upon to some degree this idea of plenary policing, a not-fully-fleshed-out concept," the Court nonetheless finds defendants' motion unavailing as to this issue. Hearing 4 (Oct. 30, 2020) (doc. 62).

Case law is scarce concerning the application of the Tenth Amendment in this precise context, but courts have generally allowed claims to go forward where the plaintiff identifies a federal practice that unduly interferes with the state's core sovereign police functions. See, e.g., Washington v. U.S. Dep't of Homeland Sec., – F.Supp.3d –, 2020 WL 1819837, *4 (W.D. Wash. Apr. 10, 2020) (allegations that the U.S. Department of Homeland Security and U.S. Customs and Border Protection civilly arrested people in or near state courthouses plausibly stated a violation of the Tenth Amendment). That is precisely what plaintiffs have alleged in this case. First Am. Compl. ¶¶ 101-13 (doc. 14). Stated differently, given the tone and content of the October 22 and 30, 2020, hearings, coupled with Judge Mosman's actual findings and the pleadings themselves, the Court cannot hold that plaintiffs' complaint is insufficient for the purposes of allowing discovery to proceed in this case.

## RECOMMENDATION

For the reasons stated herein, defendants' Motion to Dismiss (doc. 72) should be denied and Motion to Stay Discovery (doc. 73) should be denied as moot. The parties shall jointly submit a proposed case management schedule within 14 days of the District Judge's order.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 27th day of January, 2021.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

Page 8 – FINDINGS AND RECOMMENDATION