IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| WESTERN STATES CENTER, INC., an Oregon public benefit corporation; THE FIRST UNITARIAN CHURCH OF PORTLAND, OREGON, an Oregon religious nonprofit corporation; SARA D. EDDIE, an individual; OREGON STATE REPRESENTATIVE KARIN A. POWER, an elected official; and OREGON STATE REPRESENTATIVE JANELLE S. BYNUM, an elected official, | Case No. 3:20-cv-01175-JR |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY; UNITED STATES CUSTOMS AND BORDER PROTECTION; FEDERAL PROTECTIVE SERVICE; and UNITED STATES MARSHALS SERVICE, | FINDINGS & RECOMMENDATION |
| Defendants. | |

RUSSO, Magistrate Judge:

On May 11, 2021 the Court granted defendants' motion to dismiss, and entered judgment dismissing the case with prejudice. ECF 100. Plaintiffs timely moved for attorneys' fees under the Equal Access to Justice Act, and their motion is now before the Court. For the following reasons, the Court should find plaintiffs were not the prevailing party in this lawsuit and therefore deny plaintiffs' motion.

Page 1 – FINDINGS & RECOMMENDATION

## BACKGROUND

On July 21, 2020, plaintiffs – three residents of Portland, Oregon (including two Oregon state representatives) and two Portland-based organizations – initiated this lawsuit. On July 27, 2020, plaintiffs filed their First Amended Complaint alleging two categories of claims centering on defendants' response to the protests occurring outside the Mark O. Hatfield U.S. Courthouse in downtown Portland: (1) deprivation of First Amendment rights; and (2) deprivation of Tenth Amendment rights. *See generally* ECF 14. On November 2, 2020, Judge Mosman issued a preliminary injunction, finding that plaintiffs were likely to succeed on the merits of their First Amendment claim "in a limited way on the retaliation theory here, and that justifies injunctive relief, at least until we can engage in further discovery." ECF 62 at 4-5, 7-9. Judge Mosman vacated the injunction one week later, however, because protest activity around the U.S. Courthouse had stopped. ECF 50.

About a month later, defendants filed a motion to dismiss for lack of jurisdiction and failure to state a claim. On May 11, 2021 Judge Mosman granted defendants' motion, dismissed the case with prejudice, and judgment was entered in favor of defendants. *See* ECF 99, 100.

## LEGAL STANDARD

The Equal Access to Justice Act provides that a court shall award fees and costs incurred by a prevailing party "in any civil action ... including proceedings for judicial review of agency action, brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). A party eligible to receive an award of attorney fees under the EAJA must be the prevailing party who received a final judgment in the civil action. 28 U.S.C. § 2412(d)(2)(H).

The party seeking EAJA fees has the burden to establish the requested fees are reasonable. *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983); *Atkins v. Apfel*, 154 F.3d 988 (9th Cir. 1998). As a result, "[t]he fee applicant bears the burden of documenting the appropriate hours expended in the litigation, and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992); *see also* 28 U.S.C. § 2412(d)(1)(B)("A party seeking an award of fees and other expenses shall ... submit to the court an application for fees and other expenses which shows ... the amount sought, including an itemized statement from any attorney ... stating the actual time expended.").

Where documentation of the expended time is inadequate, the court may reduce the requested award. *Hensley*, 461 U.S. at 433, 436-47. Further, "hours that were not reasonably expended" should be excluded from an award, including "hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434. A determination of the number of hours reasonably expended is within the Court's discretion. *Cunningham v. County of Los Angeles*, 879 F.2d 481, 484-85 (9th Cir. 1988).

## DISCUSSION

Plaintiffs seek fees under the EAJA because they prevailed at the preliminary injunction phase of this lawsuit, even though the Court rescinded the injunction after eight days and ultimately dismissed the case as moot. Because plaintiffs cannot show they were a "prevailing party" under the EAJA, the Court should find they are not entitled to fees and deny the motion.

### I.     Plaintiffs Were Not the Prevailing Party

To qualify as a "prevailing party" under the EAJA a plaintiff must meet two criteria. "First, he must achieve a 'material alteration of the legal relationship of the parties.' " *Carbonell v. I.N.S.*, 429 F.3d 894, 898 (9th Cir. 2005) (quoting *Buckhannon Bd. & Care Home, Inc. v. West*

*Virginia Dep't of Health & Human Res.*, 532 U.S. 598, 604–05 (2001)). "Second, that alteration must be 'judicially sanctioned.'" *Id.*

The parties differ over the first of these criteria—whether plaintiffs achieved a "material alteration" of the legal relationship between them and defendants to qualify as a "prevailing party." Plaintiffs argue Ninth Circuit precedent dictates that the winner of a preliminary injunction achieves this "material alteration" where a "subsequent dismissal based on mootness did not defeat or undermine plaintiff's prevailing party status." ECF 109 at 7 (citing *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712 (9th Cir. 2013)).[1] Defendants counter that the Court's preliminary injunction did not affect the "enduring change to the parties' relationship" that the prevailing party inquiry requires. ECF 118 at 8. Plaintiffs do not point to any "enduring change" in their reply, but simply argue there is no durational requirement for injunctive relief to qualify as the "material alteration" necessary for prevailing party status, and that "*for the week it lasted*, [the preliminary injunction] prevented Defendants from policing beyond 100 yards—one city block in all directions—from the federal situs in the absence of violations of federal criminal law." ECF 120 at 4 (emphasis added).

Following Ninth Circuit precedent, the Court should find the eight-day preliminary injunction does not qualify plaintiffs as prevailing parties in this litigation for purposes of the EAJA. The Ninth Circuit states that "[p]recisely because the relief afforded by a preliminary injunction may be undone at the conclusion of the case, some inquiry into events post-dating the injunction's issuance will generally be necessary." *Higher Taste, Inc.*, 717 F.3d at 717. In *Higher Taste*, for example, the Ninth Circuit found the plaintiff's preliminary injunction victory satisfied

---

[1] Although *Higher Taste* was an action under 42 U.S.C. § 1988, the prevailing party standard is the same here. *Wood v. Burwell*, 837 F.3d 969, 973 (9th Cir. 2016) (citing *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016)(noting that "prevailing party," as it appears in various federal fee-shifting statutes, has been interpreted consistently)).

Page 4 – FINDINGS & RECOMMENDATION

the "prevailing party" requirement because although the case was dismissed as moot following the parties' settlement, plaintiff had achieved not just "temporary relief capable of being undone" (as the preliminary injunction was in this case), but "a *lasting alteration* of the parties' legal relationship." *Id.* at 718 (emphasis added). In *Higher Taste*, plaintiff cemented its preliminary injunction relief via settlement, which led to the case's dismissal. *See id.* Plaintiffs have not pointed to a settlement, a formal policy change, or any other evidence of a "*lasting* alteration" of the rights or obligations between these plaintiffs and these defendants. The Court vacated the preliminary injunction after eight days, and dismissed the case as moot upon the change of administration; and as plaintiffs themselves argued "the Executive Order enacted as a direct result of such Tweeting is still Executive Branch policy." ECF 95 at 3.[2] As the Court understands it, if protests resumed tomorrow at the Hatfield Courthouse nothing about the eight-day preliminary injunction would inhibit the kind of federal law enforcement response that gave rise to this case. Without evidence that the relief obtained at the preliminary injunction stage somehow survives the lawsuit, the Court should find plaintiffs do not satisfy the "prevailing party" inquiry the Ninth Circuit announced in *Higher Taste*.

Related Ninth Circuit precedent echoes the requirement that the change in legal relationship must be "lasting" for the preliminary-injunction-winning plaintiff in a mooted case

---

[2] If some change in defendants' behavior moots a preliminary injunction, that preliminary injunction can suffice to cement "prevailing party" status. *See Makekau v. State*, 943 F.3d 1200, 1210 (9th Cir. 2019), cert. denied, 140 S. Ct. 2740 (2020) (Smith, J., concurring) ("If a preliminary injunction creating such material alteration is rendered moot by the defendant's own actions, prevailing party status is not disturbed."). Here, the *preliminary injunction* was not rendered moot by defendants' actions, but because protest activity near the Hatfield courthouse had ceased. *See* ECF 68. The subsequent finding of mootness, therefore, does not convert the temporary, preliminary relief Judge Mosman ordered into some "lasting change" in the parties' legal relationship; defendants' change in behavior did not moot the injunction, and that fleeting relief in no way survives this lawsuit.

Page 5 – FINDINGS & RECOMMENDATION

to have "prevailed" under the EAJA. For example, in *Watson v. County of Riverside*, 300 F.3d 1092 (9th Cir. 2002), plaintiff was a police officer accused of excessive force and was forced to write a report on the incident immediately after it took place, without the opportunity to consult with an attorney; he was then placed on administrative leave and ultimately terminated. He filed suit to prevent the sheriff's department from using his report in the appeal proceedings relating to his termination, and the district court entered a preliminary injunction barring the use of the report. The court ultimately entered summary judgment for the defendant on all but one count that raised a triable question of fact. But at that point, "the administrative hearing had long since come and gone," *id.* at 1094, so the parties agreed that the question of prohibiting the report's use was moot and the court dismissed the remaining claim. The Ninth Circuit held that the plaintiff was a prevailing party despite failing to prevail on his other claims, because the preliminary injunction was "significant, court-ordered relief that accomplished one of the main purposes of his lawsuit." *Id.* at 1096. The case was moot because "the preliminary injunction had done its job" by giving plaintiff the lasting relief he sought, so obtaining the preliminary injunction was enough to render the plaintiff the prevailing party. *Id.*

      Likewise, in *Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980), the preliminary injunction lasted until the end of the law enforcement operation that had prompted it, again making clear that the preliminary injunction had secured all the relief the plaintiffs needed until mootness gave them final relief. The City of San Francisco was attempting to identify and arrest four serial killers for whom they had composite sketches, in an operation known as Operation Zebra. The police were accused of racial profiling and the court entered an injunction against the challenged practices. While on appeal, the police captured the killers, who were sentenced and convicted, and the underlying operation ended. The court then vacated the preliminary injunction and

dismissed the case as moot. The Ninth Circuit held that the plaintiffs were prevailing parties because "the preliminary injunction prevented appellants from continued enforcement of their original guidelines, which is precisely the relief appellees sought." *Id.* at 848. And, crucially, defendants' own behavior mooted the preliminary injunction, and ensured lasting relief to the plaintiffs.

In contrast, plaintiffs here have not shown that the preliminary injunction they obtained effected an enduring change to the parties' relationship. Between plaintiffs' July 21, 2020, filing of this lawsuit, and this Court's May 11, 2021, dismissal of it, the Court entered a preliminary injunction in November 2020 that was in place for eight days. Plaintiffs have never claimed that their lawsuit was focused only on the risk of harm during those eight days, or that the preliminary injunction protected them for as long as they claimed to face a threat of injury. To the contrary, in their March 17, 2021, response to this Court's Findings and Recommendations, plaintiffs continued to assert that they faced a threat of constitutional violations that justified injunctive relief. *See* Pls.' Resp. at 3, ECF No. 95 ("[T]he bases for this Court's prior injunction have not 'eroded' as the Government claims. … [T]he Government has not shown that its behavior directed at protestors in Portland could not be reasonably expected to recur."). By continuing to seek relief after the preliminary injunction was dissolved, plaintiffs' actions demonstrate that this case is different from *Higher Taste*, *Watson*, and *Williams*, where the preliminary relief ordered by the courts continued until mootness rendered that relief effectively permanent. Indeed, when this Court dismissed plaintiffs' complaint, over plaintiffs' objection, six months after dissolving the preliminary injunction, the Court's decision principally relied on the change in presidential administrations to find plaintiffs' claims moot—a change that occurred well after the preliminary injunction was vacated. *See* ECF 99 at 2–3. Further, plaintiffs have not

pointed to any official administration policy or executive order that would render the conduct prohibited by the preliminary injunction order somehow unavailable to these defendants. As emphasized above, if tomorrow these defendants resumed the suppression tactics that led to this case, plaintiffs would need to file a new lawsuit and seek a new preliminary injunction; they could not point to any "lasting relief" from this lawsuit to make their claim.

Because plaintiffs do not meet the Ninth Circuit's definition of a "prevailing party" under the EAJA, the Court should find they are not entitled to fees, and deny the motion on that basis.

## II.   Defendants Failed to Show They Were Substantially Justified

To receive EAJA fees, a moving party must allege that the "position of the United States was not substantially justified." 28 U.S.C. § 2412(d)(1)(B). "Position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings. 28 U.S.C. § 2412(d)(2)(D); *see Meier v. Colvin*, 727 F.3d 867, 870 (9th Cir. 2013). The EAJA "creates a presumption that fees will be awarded unless the government's position was substantially justified." *Thomas v. Peterson,* 841 F.2d 332, 335 (9th Cir.1988).

The Government has the burden of showing substantial justification in response to this motion. *Meier*, 727 F.3d at 870. It must make that demonstration "with respect to each stage of the proceeding." *Id.* at 872. To avoid having attorneys' fees awarded against it, the Government must show that its "litigation position and the underlying agency action giving rise to the civil action" were justified. *Id.*; *see Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1168 (9th Cir. 2019) (en banc).

Defendants have not substantially justified their position. As the Court found at the preliminary injunction stage, defendants' actions giving rise to this lawsuit more likely than not were motivated by First Amendment retaliatory motives—which cannot be substantially justified. *See Mendenhall v. Nat'l Transp. Safety Bd.*, 92 F.3d 871, 874 (9th Cir. 1996) ("A finding that an agency's position was substantially justified when the agency's position was based on violations of the Constitution, federal statute or the agency's own regulations, constitutes an abuse of discretion."). Furthermore almost one month before the hearing on the motion for preliminary injunction, the Ninth Circuit held that the First Amendment required geographic restrictions on law enforcement activity over the same facility at issue in this case. *Index Newspapers LLC v. United Stats Marshals Serv.*, 977 F.3d 817, 832 (9th Cir. 2020). Thus, both the Government's actions giving rise to the lawsuit, and the Government's subsequent litigation position lacked substantial justification.

And crucially, defendants do nothing to satisfy their burden of showing the conduct giving rise to the litigation and their litigation position were substantially justified. First, they do not show their behavior itself was constitutional. It is well settled that the government violates the Constitution by taking direct action against particular speech. *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 165 (2015). Moreover, a constitutional violation is never substantially justified in the EAJA context. *Meinhold v. U.S. Dep't of Def.*, 123 F.3d 1275, 1278 (9th Cir. 1997), *amended by* 131 F.3d 842 (9th Cir. 1997) ("If the government's position violates the Constitution, a statute, or its own regulations, a finding that the government was substantially justified would be an abuse of discretion."). Defendants cite *Mendenhall v. National Transportation Safety Board*, 92 F.3d 871 (9th Cir. 1996) and *Yang v. Shalala*, 22 F.3d 213 (9th Cir. 1994), for the proposition that in order to be unreasonable, a constitutional violation must be coupled with a statutory or

regulatory violation. ECF 118 at 9-10. In *Meinhold*, however, published a year after *Mendenhall*, the Ninth Circuit makes clear that a violation of the Constitution *or* statute *or* regulation is not substantially justified. 123 F.3d at 1275. There is no question that the Court found it was more likely than not that a constitutional violation occurred here, so the Court should not credit defendants' argument that a statutory or regulatory violation is necessary. *See* ECF 50 & 100; Tr. Oct. 22, 2020 Hr'g at 22:19–24:2.

Even if defendants are correct, attacking plaintiffs' evidence without presenting any of their own does not satisfy their burden to show that the underlying conduct leading to this litigation was justified. For example, defendants do not defend shooting tear gas at protestors six blocks from the Hatfield Courthouse (ECF 16 at 8), arresting a peaceful protestor two blocks from the Hatfield Courthouse (ECF 16 at 9), employing a "catch and release policy" in Portland (ECF 16 at 10), or targeting journalists with tears gas and other munitions (ECF 16 at 11-12). To put it mildly, defendants have not done what the EAJA requires to show they were substantially justified in these actions.

Nor do defendants argue that their litigation position was justified. Instead, they assert that "plaintiffs' argument that the Government's position was not substantially justified does not meaningfully engage with what this Court held in granting the preliminary injunction." ECF 118 at 8. But again, it is defendants' burden to explain how their litigation position was substantially justified. First, defendants do not explain why—in the face of the Ninth Circuit's decision in a similar case, *Index Newspapers LLC v. United States Marshals Service*, 977 F.3d 817 (9th Cir. 2020)—it was reasonable for them to advance a litigation position that challenged the Ninth Circuit's directive that the Government's right to disperse crowds is spatially limited. *See id.* at 831-32. Second, defendants submitted minimal evidence to support their position during the

Page 10 – FINDINGS & RECOMMENDATION

litigation. Indeed, a key issue in the preliminary injunction proceeding was defendants' failure to present any evidence supporting their actions. This lack of evidence also prevents defendants from sustaining their EAJA burden of showing reasonable justification. *Id.*

Accordingly, should the Court disagree and find plaintiffs are the prevailing party, it should find defendants have not met their burden to show that their positions prior to or during the litigation were substantially justified.

### III.    Plaintiffs' Fee Calculation Is Largely Reasonable

The EAJA provides for recovery of "reasonable attorney fees." 28 U.S.C. § 2412(d)(2)(A). Such fees "shall be based on prevailing market rates for the kind and quality of the services furnished," *id.*, subject to the Ninth Circuit's table of EAJA maximum rates on its website. https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (accessed November 30, 2021). Because the parties do not dispute plaintiffs' requested hourly rate—drawn from the Ninth Circuit table—any fees the Court awards should be calculated at the hourly rate of $207.78. ECF 118 at 10-15.

Defendants take issue with some of plaintiffs' billing entries as "vague" and for using "block billing." Defendants call out 19.5 hours of the 683.25 hours expended in this case on this basis and assert that this justifies a 20% across the board reduction in fees. ECF 118 at 11.

There is not a *per se* ban on block billing (or even vague entries). The concern with block billing is that, in certain instances, it can prevent the court from understanding precisely where time was spent and so inhibit a determination of whether time spent was reasonable. *Cf. Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) ("[B]lock billing makes it more difficult to determine how much time was spent on particular activities"); *see also Roadrunner Transp. Servs., Inc. v. Tarwater*, No. SACV101534AGMLGX, 2013 WL 12170492, at *2 (C.D. Cal.

Dec. 9, 2013), *aff'd sub nom.*, 642 F. App'x 759 (9th Cir. 2016) ("But just putting multiple tasks into one billing entry doesn't necessarily raise the concerns of block billing."). Here, a handful of plaintiffs' time entries are block billed, but overall, counsel accounted for their time in detail such that the Court can understand where time was spent and if that time was reasonable. *Mozingo v. Oil States Energy Servs., L.L.C.*, No. CV 15-529, 2018 WL 4473345, at *9 (W.D. Pa. Sept. 18, 2018) ("A court may accept a block billed entry 'if there is a reasonable correlation between the various activities listed in a block and the time spent completing those tasks.'") (citation omitted).

Counsel declarations also explain the time spent in this matter. Specifically, the Davidson declaration provides a breakdown of all the time entries. ECF 110 at 4-8. Mr. Davidson divides the litigation into eight phases—Complaint, Amended Complaint, Injunction; Evidence, Mootness; Analysis for Reply, Reply; Oral Argument on Injunction Motion; Drafting Injunction; Government's Emergency Appeal; Second Hearing on Injunction; and Rule 26(f), Rule 16, Motion to Stay Discovery, Motion to Dismiss—and provides a description of each phase and the aggregate time spent by the timekeeper. *Id.* This explanation, coupled with the time records, paints a clear picture of the time spent and allows the Court to make a reasonableness determination of the fees requested.

Even if the Court finds it is unable to determine the reasonableness of the few entries defendants specifically call out (19.5 hours total, totaling $4,051.71), the Court should excise those fees rather than reducing the overall award by a 20 percent cut as defendants request. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 944 (9th Cir. 2007) (holding that the district court erred in imposing a 20 percent across-the-board reduction for block billing).

Ultimately, plaintiffs cannot have it both ways. They carried on litigating the issues temporarily resolved by the preliminary injunction, arguing that under then-effective Executive Order 13933, "the Government could restart its illegal, speech suppressive activity at any time." ECF 95 at 3.[3] They cannot now argue their temporary injunctive relief somehow created a lasting legal remedy. As shown by *Higher Taste* and related Ninth Circuit precedent, ephemeral relief is not sufficient to justify fees under the EAJA. The Court should therefore deny plaintiffs' motion and find fees—though reasonably calculated—are not warranted here.

## CONCLUSION

For these reasons, plaintiffs' motion for fees (ECF 103) should be denied.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 3rd day of December, 2021.

                                        /s/ Jolie A. Russo
                                          Jolie A. Russo
                              United States Magistrate Judge

---

[3] Although the President rescinded Executive Order 13933 on May 14, 2021, the Court had already entered judgment on May 11, 2021. *See* 86 FR 27025.