IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**WESTERN STATES CENTER, INC.**, an Oregon public benefit corporation, **FIRST UNITARIAN CHURCH OF PORTLAND, OREGON**, an Oregon religious nonprofit corporation, **SARA D EDDIE**, an individual, **REPRESENTATIVE JANELLE S BYNUM**, an elected official, and **REPRESENTATIVE KARIN A POWER**, an elected official,

        Plaintiffs,

v.

**UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CUSTOMS AND BORDER PROTECTION, FEDERAL PROTECTIVE SERVICE**, and **UNITED STATES MARSHALS SERVICE**,

        Defendants.

Case No. 3:20-cv-01175-JR

OPINION & ORDER

**MOSMAN, J.,**

On December 3, 2022, Magistrate Judge Jolie A. Russo issued her Findings and Recommendation ("F&R") [ECF 122], recommending that I deny Plaintiffs' application for fees pursuant to the Equal Access to Justice Act ("EAJA"). Plaintiffs filed objections to the F&R on December 16, 2021. Objs. to F&R [ECF 124]. The Government responded to those objections two weeks later. Resp. to Objs. to F&R [ECF 125]. Upon review, I disagree with Judge Russo on the issue of which party prevailed and grant Plaintiffs' application.

1 – OPINION & ORDER

## BACKGROUND

Plaintiffs are two nonprofit organizations and three Oregon residents—including two Oregon state representatives. They initiated this action in July 2020, claiming the federal government's intervention in the George Floyd protests violated the First and Tenth Amendments of the United States Constitution. Compl. [ECF 1] ¶¶ 55–68.

Shortly after filing their complaint, Plaintiffs moved for a temporary restraining order and preliminary injunction. Mot. for Prelim. Inj. [ECF 16]. The motion requested that the federal government be prohibited from "engaging in law enforcement activities other than in the immediate defense of federal personnel or property on federal property or its curtilage, except to the extent necessary to remove an imminent threat or to arrest someone violating federal law." *Id.* at 34–35.

I granted the preliminary injunction on First Amendment grounds on October 30, 2020. I found that tweets and other public statements from President Donald Trump and Acting Secretary of Homeland Security Chad Wolf supported an inference that the Government's law enforcement activities were conducted with retaliatory intent. Tr. of Proc. [ECF 62] at 6:5–11. On November 3, 2020—the day of the presidential election—the Government moved for a stay of the injunction pending its appeal. Mot. for Stay [ECF 53]. Major news organizations called the election in Joe Biden's favor on November 7. Ted Johnson & Dominic Patten, *The Moment When Networks Called the Presidential Race for Joe Biden*, Deadline (Nov. 7, 2020), https://deadline.com/2020/11/joe-biden-president-cnn-1234610930/. On November 9, Plaintiffs filed a declaration observing that protests at the Hatfield Courthouse had apparently ceased. Suppl. Davidson Decl. [ECF 68]. I held a status conference that same day in which I vacated the preliminary injunction and denied the motion for stay as moot. [ECF 69].

In May 2021, I granted Defendants' motion to dismiss and entered judgment against Plaintiffs. Op. & Order [ECF 99]; Judgment [ECF 100]. I found that, because the administration had changed, the retaliatory conduct against Plaintiffs—which was largely predicated on extraordinary statements from President Trump and his officials—"could not reasonably be expected to recur." Op. & Order [ECF 99] (quoting *Rosemere Neighborhood Ass'n v. U.S. Env't Prot. Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009)).

Now, despite the judgment against them, Plaintiffs seek fees under the Equal Access to Justice Act (EAJA). The EAJA allows "the prevailing party" in a proceeding "brought by or against the United States" to recover fees and expenses. 28 U.S.C. § 2412(d)(1)(A). A prevailing party is not entitled to fees under § 2412(d)(1)(A) if "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."

In her F&R, Judge Russo determined that Plaintiffs could not be awarded EAJA fees because they were not the prevailing party. F&R at 7, 13. Nevertheless she conducted the rest of the analysis required to receive fees under EAJA. *Id.* at 8–12. In doing so, she found that the Government had failed to meet its burden to show that its treatment of Portland protestors was substantially justified. *Id.* at 9. And she then found that Plaintiffs' fees were calculated reasonably. *Id.* at 11–12. Thus, but for Plaintiffs' failure to show that they prevailed in this litigation, Judge Russo would recommend the fee application be granted.

## LEGAL STANDARD

On post-judgment matters, the magistrate judge makes only recommendations to the court, to which any party may file written objections. *See Estate of Conners by Meredith v. O'Connor*, 6 F.3d 656, 659 (9th Cir. 1993). The court is not bound by the recommendations of the magistrate judge but retains responsibility for making the final determination. The court is

3 – OPINION & ORDER

required to make a de novo determination regarding those portions of the report or specified findings or recommendation as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). Moreover, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny under which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

Plaintiffs object to Judge Russo's determination that they were not the prevailing party and are therefore not entitled to EAJA fees. Specifically, they contend that Judge Russo has incorrectly tied their complaint to the attempted rescission of one executive order. Objs. to F&R [ECF 124] at 1–2. Rather, Plaintiffs claim their requested relief was much broader: "restrain[t] [of] the Government's abuses in the streets of Portland." *Id.* at 1. They claim they achieved this goal, pointing out that the Government withdrew forces from Portland. Moreover, they argue that the preliminary injunction itself chilled the possibility of future retaliatory governmental action, even after it was lifted. Thus, Plaintiffs contend, they "succeed[ed] on a[] significant issue in litigation which achieve[d] some of the benefit" they sought. *Id.* at 5–6 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

In response, the Government argues that the preliminary injunction was lifted without any intervening change in circumstances that would make the geographical limit on federal intervention a "lasting alteration." Resp. to Objs. [ECF 125] at 1 (quoting *Higher Taste, Inc. v. City of Tacoma*, 717 F.3d 712, 718 (9th Cir. 2013)). Indeed, if a preliminary injunction provides

4 – OPINION & ORDER

a party with "temporary relief capable of being undone," then that party cannot be said to have prevailed. *Higher Taste*, 717 F.3d at 718. Instead, the party must show that its actions caused the "material alteration of the parties' legal relationship." *Id.* at 717–18.

Generally, when a preliminary injunction protects a plaintiff long enough until her case is moot, courts consider the preliminary injunction to have provided a material alteration. *Higher Taste*, 717 F.3d at 718 (discussing cases in which "mootness provided assurance . . . that the plaintiff's initial victory was enduring rather than ephemeral"). In *Williams v. Alioto*, 625 F.2d 845 (9th Cir. 1980), government officials instituted a "stop and frisk" policy to find the culprits behind a string of unsolved murders. A group of Black men moved for a preliminary injunction, arguing the practice was unconstitutional profiling. *Id.* at 847. When the killers were convicted, the police investigation ceased, and the preliminary injunction was vacated as moot. *Id.* The Ninth Circuit found the plaintiffs to have been the prevailing party for EAJA purposes because they "obtained the[ir] desired relief" for the "pertinent time period." *Id.* at 847–48.

Similarly, in *Watson v. County of Riverside*, 300 F.3d 1092 (9th Cir. 2002), the Ninth Circuit found a police officer to be the prevailing party after his preliminary injunction prevented an arrest report from being used as evidence in a termination proceeding. After that termination proceeding, summary judgment was entered against the police officer. *Id.* at 1094. Nevertheless, the police officer was found to be the prevailing party because "the preliminary injunction had done its job," by preventing use of the contested police report in his termination proceeding. *Id.* at 1096.

Here, the preliminary injunction protected Plaintiffs through a tumultuous election week. Distaste for President Trump and the institutions that brought him into power were driving forces for many protesters in downtown Portland. *See* Chris McGreal, *"I Want to Stand Up to Trump"*:

5 – OPINION & ORDER

*Portland Protesters Unleash Fury over BLM, COVID-19 and Economy*, Guardian (July 29, 2020), https://www.theguardian.com/us-news/2020/jul/29/portland-protests-trump-blm-covid-19-economy. Though no protests occurred outside the Hatfield Courthouse during the week of the injunction, Suppl. Davidson Decl. [ECF 68] ¶ 3, a riot was declared on November 4 in light of protests against President Trump's court challenges to ballot-counting practices in battleground states. Assoc. Press, *Riot Declared in Portland as Rioters Smash Windows*, Politico (Nov. 11, 2020), https://www.politico.com/news/2020/11/05/portland-protests-election-2020-434221. Even more heated demonstrations would have been highly likely had President Trump won re-election. Having seen President Trump's electoral defeat, the protesters had less reason to protest. And with President Trump on his way out of office, protesters had less reason to fear retaliation. Thus, the preliminary injunction—although brief—carried Plaintiffs through the natural end of the dispute that sparked their suit.

But a natural end is not necessarily legally binding. In each of the cases where the Ninth Circuit has found a mooted preliminary injunction to materially alter the parties' relationships, some binding action or event has cemented the purposes of the injunction. In *Higher Taste*, the parties reached a settlement. In *Williams*, the challenged investigation closed. And in *Watson*, the challenged administrative proceeding had come and gone. Here, the challenged policy merely petered out.

Judge Russo's carefully reasoned F&R hinges on this distinction. Executive Order 13933, which authorized federal intervention in protests, was not rescinded until after judgment was entered against Plaintiffs. Until that rescission, the Government was fully capable of re-initiating its retaliatory practices. F&R at 7. As a result, Judge Russo found that the relief that Plaintiffs

achieved through their preliminary junction was fleeting and insufficient to dub them the prevailing party. *Id.* at 8.

I take a different view from Judge Russo as to how mootness affects the prevailing party analysis. By finding Plaintiffs' claims moot, I determined that the relief from the preliminary injunction was—for all practical purposes—permanent. True, the Biden administration theoretically could have adopted the Trump administration's hardline position on Portland protesters. But such a political about-face would not have been reasonably foreseeable. *See Robirds v. ICTSI Or., Inc.*, 839 F. App'x 201, 201 (9th Cir. 2021) (per curiam) (unpublished) (finding a case moot because "there is no reasonable expectation that the wrong will be repeated" (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953))). Thus, the only meaningful difference between this case and *Williams* and *Watson* is that in those cases preliminary injunction lasted long enough that engaging in the previously enjoined practice became *impossible*.[1] Here, the preliminary injunction lasted until engaging in the previously enjoined practice became *unforeseeable*. I determine that this distinction is insufficient to topple Plaintiffs' claim that they are the prevailing party in this case.

To find otherwise would throw Plaintiffs into limbo. It would hold that the risk of recurrence is too likely for Plaintiffs to have prevailed yet also not likely enough for full merits adjudication. Rather than condemn Plaintiffs to this purgatory, I take my finding of mootness to its logical conclusion.

---

[1] Judge Russo also distinguishes this case on the ground that Plaintiffs' claims were mooted by an external factor—the cessation of protests at the Hatfield Courthouse—instead of the Government's conduct. F&R at 5 n.2. Yet in *Watson*, the police officer's case was not mooted "'by the defendant's own actions,'" *id.* (quoting *Makekau v. Hawaii*, 943 F.3d 1200, 1210 (9th Cir. 2019) (Smith, J., concurring)), but rather the completion of an administrative proceeding. *Watson*, 300 F.3d at 1096. Thus, a plaintiff may be a prevailing party even when his case is mooted by an event outside of the defendant's control. Moreover, the Government's conduct did contribute to the mooting of Plaintiffs' claims. It ceased its practice of policing outside the perimeter of the Hatfield Courthouse. Despite many protests in Portland—including some on election day—federal law enforcement officers did not intervene. *See* Suppl. Davidson Decl. [ECF 68] Ex. 1 at 1–4.

7 – OPINION & ORDER

At bottom, Plaintiffs prevailed in the sole merits adjudication that occurred in this case. Though external factors made their preliminary injunction moot, "the preliminary injunction [did] its job" by protecting Plaintiffs up until the point where unconstitutional enforcement of an executive policy was no longer reasonably likely to occur. *Watson*, 300 F.3d at 1096. I therefore decline to adopt Part I of Judge Russo's opinion and grant Plaintiffs' fee application in full.

## CONCLUSION

Upon review, I agree with Judge Russo's recommendation as to Parts II and III,[2] and I ADOPT those sections of the F&R [ECF 122] as my own opinion. I disagree with Judge Russo's recommendation as to Part I and instead find that Plaintiffs were the prevailing party in this case. Accordingly, I GRANT Plaintiffs' Application for Fees [ECF 103] and award $144,043.48 in attorney fees and $5,092.53 in expenses.

IT IS SO ORDERED.

DATED this 15th day of March, 2022.

MICHAEL W. MOSMAN
Senior United States District Judge

---

[2] The Government does not object to Parts II and III of Judge Russo's F&R, which found that the Government's conduct was not substantially justified and that Plaintiffs' fees were reasonable, respectively. F&R at 8–13. I agree with those portions of her opinion in full.